NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD BURKE<br><br>                    Plaintiff,<br><br>v.<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al.,<br><br>                    Defendants. | Civil Action No.: 11-6853 JLL)<br><br>**OPINION** |

**LINARES,** District Judge,

This matter comes before the Court on Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.       BACKGROUND**

Donald Burke ("Burke" or "Plaintiff") served as an attorney for the Port Authority of New York and New Jersey ("Port Authority" or "Defendant") for 26 years until he resigned on October 10, 2010. In April 1992, Mr. Burke was promoted to Deputy New Jersey Solicitor. During his appointment in April 1992 until January 2003, Mr. Burke received awards for his performance and dedication to Port Authority, letters of appreciation and commendation for his work. In January 2003, he was promoted to the position of New Jersey Solicitor of the Law

1

Department of the Port Authority.  At that time, he was also appointed Counsel of Record for all litigated matters in New Jersey handled by Port Authority attorneys.

In or around 2005, some female attorneys complained that older female attorneys in the Port Authority Law Department were being paid less than younger male attorneys.  As New Jersey Solicitor, Mr. Burke was responsible for evaluating the performance of the staff of attorneys and professionals assigned to the Office of the New Jersey Solicitor General.  According to Plaintiff, he was then directed by his supervisors, Defendants Hartwyk and Begley to manipulate the ratings to justify apparent pay discrimination.  Specifically, Mr. Burke alleges that he was directed to lower the ratings he had given to two older female employees, Shirley Spira and Dolores Ward, and to raise the rating of a male employee initially rated lower than Spira and Ward so it would appear that the male employee had performed better than them.  Mr. Burke claims he resisted making these changes but was ordered to do so anyway.  Port Authority subsequently disciplined Spira and Ward for actions that similarly situated employees had not been disciplined for.  Mr. Burke claims he further objected and believes that the disciplinary actions were taken to force the older employees to resign.

After Mr. Burke objected to the manipulation of the review, he claims that his supervisors began to retaliate against him.  On one occasion, Mr. Begley summoned Mr. Burke to his office and accused him of not properly preparing witnesses for deposition.  Even after Mr. Burke produced evidence that the witnesses were properly prepared, Mr. Begley still disciplined Plaintiff.  Mr. Begley gave Mr. Burke a "counseling" that expressed dissatisfaction with his performance.  Mr. Burke had never before received a "counseling."  Plaintiff further alleges that he was accused of not being a "team member" because he objected to manipulating the older

2

employees' ratings.

In 2007, the Executive Director issued a directive to reduce staff by 10%.  However, according to Plaintiff, the Port Authority was actively hiring younger, less experienced attorneys.  The Executive Director was quoted as saying his goal was to bring in "young" workers.  Ultimately, Ms. Spira and Ms. Ward were the only lawyers terminated as part of the reduction in force.  Mr. Burke claims he was not consulted regarding the decision to terminate these employees even though he was their direct supervisor.  Mr. Burke alleges that when he complained about the termination of these attorneys he was accused by the Manager of Legal Administration of "setting up a lawsuit" for these women.[1]  Mr. Begley also allegedly threatened Mr. Burke with termination if he did not "go along" with the firing of Ms. Spira and Ms. Ward.

Mr. Burke continued to experience what he characterizes as retaliation for these opinions.  On February 8, 2008, Port Authority eliminated Plaintiff's position, which effectively demoted him.  Plaintiff alleges that as part of the Law Department reorganization, the Port Authority eliminated many supervisory titles that disproportionately impacted older and female attorneys.  After the reorganization, Mr. Burke's office was relocated to an area populated by older lawyers that Port Authority employees colloquially refer to as "death row."  Mr. Burke claims Port Authority refused to provide him with the basic resources necessary to effectively do his job.  For example, on one his larger cases, Port Authority denied Plaintiff's request for additional litigation support.  Mr. Burke says he was forced to work almost every weekend and often late into the evening.

---

[1] The EEOC issued a probable cause finding in favor of Ms. Spira and Ms. Ward.  Thereafter, the EEOC filed suit on their behalf in the Southern District of New York.  The case is currently pending as <u>EEOC v. The Port Authority of NY/NJ</u>, 10-cv-7464 (S.D.N.Y.).

Mr. Burke filed a charge of discrimination (the "Charge") with the Equal Opportunity Employment Commission ("EEOC") on or about August 8, 2008. In the charge, Mr. Burke claims he was being retaliated against after objecting to discriminatory practices. In April 2009, he was interviewed by an EEOC investigator in connection with the allegations in his Charge and the charges filed by the female attorneys. After he filed the charge, Mr. Burke claims ten significant matters were reassigned to him. When Mr. Burke expressed to Mr. Begley that the workload was untenable, Mr. Begley allegedly threatened to fire him. Further, when Mr. Burke requested time off to attend his brother-in-law's funeral, his request was denied.

In 2010, Mr. Burke wrote an article to be published in New Jersey Police Chief's magazine. Port Authority has a policy requiring Port Authority's Office of Public Affairs to approve articles written by employees before they are published. Mr. Burke provided an appellate division opinion wherein a similar requirement by the Waterfront Commission had been struck down by the Court as unconstitutional. Defendant refused to let Plaintiff publish his article.

In May 2010, Mr. Begley instructed Mr. Burke to use his vacation days in order to attend CLE classes even though other Port Authority attorneys were not required to use their vacation days for same. In June 2010, Mr. Burke became concerned that another attorney for Port Authority was violating the Rules of Professional Conduct and wrote a memo to senior Law Department Management. Mr. Burke was allegedly admonished by Mr. Begley for writing the memo and was informed that he would not be permitted to participate in the investigation. After this incident, Defendants removed Plaintiff from his position as Counsel of Record and recommended that he be terminated. Plaintiff claims that he had intended to work for Port

Authority for many more years but in order to protect his pension, accepted an early retirement package, effective October 10, 2010.

The instant action was removed to this Court on November 11, 2011. Plaintiff brings claims under the Age Discrimination in Employment Act, 42 U.S.C. § 1983, the First Amendment, as well as various New Jersey state law claims. Defendants have moved to dismiss Plaintiff's complaint in its entirety.

## II.   LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element[s]." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d. Cir. 2008) (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

### A. ADEA Claim

Defendants move to dismiss Plaintiff' Age Discrimination in Employment Act ("ADEA") as time-barred. Under the ADEA, in order to commence a civil action, a Plaintiff must first file a charge with the EEOC within 180 after the alleged unlawful practice occurred.[2] 29 U.S.C. § 626(d)(1)(A); Snyder v. Baxter Healthcare, Inc., 393 Fed. Appx. 905, 908 (3d Cir. 2010). Further, a Plaintiff may not bring a civil action until sixty days after filing a charge with the EEOC alleging unlawful discrimination. 29 U.S.C. § 626(d)(1). However, unlike other discrimination statutes, there is no requirement that the EEOC issue a Right to Sue letter prior to commencing a civil lawsuit. Id. Rather, the only other statutory requirement is that the civil suit must be commenced within two years after the cause of action accrued, or within three years in the case of a "willful violation." 29 U.S.C. § 626(e); 29 U.S.C. § 255(a). Plaintiff has clearly exhausted his administrative remedies, and viewing the facts in the light most favorable to Plaintiff, Defendants' actions can be construed as willful violations of the ADEA. Therefore, Plaintiff's claims regarding actions taken by Defendants on or after October 11, 2008 are timely.

Furthermore, under a continuing violation theory, a plaintiff may pursue claims for discriminatory conduct that accrued prior to the filing deadline "if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination by Defendant." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). To establish a continuing violation, a plaintiff must show that: "1) at least one allegedly discriminatory act occurred within the filing period and 2)

---

[2] A 300-day period applies where the plaintiff has initially instituted proceedings with a State or local agency. Otherwise the applicable period is 180 days.

the discrimination is more than the occurrence of isolated or sporadic acts of intentional discrimination and is instead a continuing pattern of discrimination." Parikh v. United Parcel Service, Inc., No. 09-1652 (DMC), 2011 WL 5193104, at *3 (D.N.J. Oct. 31, 2011) (citing Rush v. Scott Specialty Glasses, Inc., 113 F.3d 476, 481 (3d Cir. 1997)).

Plaintiff has claimed several allegedly discriminatory instances that appear to arise out of a pattern of discrimination that is sufficient to invoke the continuing violation doctrine; particularly with respect to the alleged retaliatory behavior he claims he was subjected to. Accordingly, Plaintiff's ADEA claim is timely.

### B.   § 1983 Claims

Plaintiff brings claims under § 1983, which provides civil remedies against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  § 1983, does not, by itself, confer any substantive rights, it only serves to enforce rights granted under the Constitution or federal law. Mayer v. Gottheimer, 382 F. Supp. 2d 635, 546-47 (D.N.J. 2005).  Here, Plaintiff claims violations of the Equal Protection Clause of the Fourteenth Amendment for age discrimination and retaliation, and also of the First Amendment because Defendants prohibited Plaintiff from publishing an article.

The Third Circuit has not yet addressed whether the ADEA preempts age discrimination claims brought under § 1983.  However, it logically follows that age discrimination is not actionable under the Equal Protection Clause.  Were the Courts to allow this cause of action, it would permit Plaintiffs to bypass the exhaustion of administrative remedies requirement that was affirmatively put in place when Congress passed the ADEA.  Cataldo v. Moses, 361 F. Supp. 2d 420, 427-28 (D.N.J. November 3, 2004) ("The ADEA provides a comprehensive statutory

7

scheme to prohibit job related age discrimination."). Accordingly, Plaintiff may not pursue an age discrimination claim under § 1983. Similarly, Plaintiff may not pursue retaliation claims under § 1983. Plaintiff's retaliation claim should have been properly brought under Title VII. As the Supreme Court wrote in Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 375-76 (1979), if the plaintiff were allowed to bring a retaliation claim under Title VII, "the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." Accordingly, Plaintiff may not bring claims for age discrimination and its related retaliation under § 1983.

However, Plaintiff's § 1983 claims for violations of the First Amendment may remain. Defendant alleges that Plaintiff's Complaint does not contain facts necessary to support such a claim. This Court disagrees. Plaintiff has alleged, *inter alia*, that he was prohibited from publishing an article on what Plaintiff claims is a matter of public concern. When deciding a motion to dismiss, Courts must required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. Plaintiff has plead sufficient facts to warrant an inference of a First Amendment violation and survive Defendants' motion to dismiss the relevant claim. Accordingly, Plaintiff's § 1983 for violations of the First Amendment remains in its entirety.

    **C.**    **State Law Claims**

    **1. New Jersey Law Against Discrimination ("NJLAD")**

Defendants argue that Plaintiff cannot bring a claim under NJLAD because it does not apply to bi-state agencies like Defendant Port Authority. The Third Circuit has not yet addressed whether port authority is subject to suit under individual state laws. Lower federal courts had the

New Jersey Supreme Court have reached conflicting conclusions. Compare Ballinger v. Del. River. Port Authority, 172 N.J. 586 (2002), with Settlecase v. Port Authority, 13 F. Supp. 2d 530, 535, (S.D.N.Y. 1998).

Despite the absence of an explicit reference to the Port Authority in the relevant state statute, this Court will infer that the legislature intended the law to apply to the activities of bi-state agencies. The very purpose of the NJLAD is to prevent discrimination. Accordingly, absent some specific, clear indication intending to exclude a specific employer such as Defendant herein, it follows that the legislature did not intend to exclude any particular employer.

Furthermore, in a 1951 Amendment to the bi-state compact, the Port Authority broadly consented to "suits, actions, or proceedings of any form or nature at law in equity or otherwise." N.J.S.A. 32-1-157; N.Y. Unconsol. Laws § 7101. The amendment further provides that "the said two States consent to liability on the part of the Port Authority in such suits actions or proceedings for tortious acts committed by it and its agents to the same extent as through it were a private corporation. Therefore, even if the New Jersey legislature did not originally intend to apply the NJLAD to the Port Authority, the plain language of its own contractual amendment consents to application of same and Defendants' motion to dismiss Plaintiff's NJLAD claim is denied.

### 2. Constructive Discharge

Defendants argue that Plaintiff's constructive discharge claim must also be dismissed because Plaintiff must first establish a violation of the NJLAD, which he cannot do because it does not apply to bi-state agencies. However, in light of this Court's ruling regarding the NJLAD, Plaintiff has satisfied the first requirement for a constructive discharge claim. Plaintiff

must also prove that a reasonable person would resign under the same conditions. In this case, Plaintiff has alleged that he was repeatedly retaliated against for complaining about discrimination, and was ultimately threatened with termination and the loss of his pension if he did not resign. Such allegations, when viewed in the light most favorable to Plaintiff warrants the conclusion that a reasonable person could be lead to resign under the same circumstances. Accordingly, Defendants' motion to dismiss Plaintiff's constructive discharge claim is denied.

### 3. State Constitutional Claims

Plaintiff's allegations that Defendants' actions violate his rights under both the New York and New Jersey constitutions are insufficient to satisfy the pleading requirements of Rule 8(a). Plaintiff does not identify any specific state constitutional provisions that he alleges have been violated until his opposition until the instant motion. Plaintiff's claims can only be supplemented through proper amendment of his complaint, and not through any other pleadings. Accordingly, Plaintiff's state constitutional claims must be dismissed for failure to satisfy the pleading requirements of Rule 8.

### 4. Conspiracy and Economic Interference

Under New Jersey law, "a civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act . . . the principle element of which is an agreement between the parties to inflict a wrong against or injury upon another., and an overt act that results in damage." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (internal citations omitted). Plaintiff's complaint fails to plead these essential elements. Indeed, Plaintiff's complaint fails to allege any agreement between two or more individuals that intended to harm Plaintiff. Accordingly, Plaintiff's conspiracy claim is dismissed.

As to the economic interference claim, the Plaintiff must plead the following elements: 1) existence of a protected interest, not necessarily a contract; 2) defendant's intentional interference without justification; 3) a reasonable likelihood that Plaintiff anticipated the interest would continue but for the interference; and 4) resulting damage.  Plaintiff has alleged that he was forced to resign from his employment or suffer termination.  Plaintiff further claims that but for Defendants' actions, he had intended to continue working for Port Authority but for this ultimatum.  Although Plaintiff did receive an early retirement package, a reasonable inference taken in favor of Plaintiff suggests that he likely suffered economic harm due termination of his employment.  Accordingly, Defendant's motion to dismiss Plaintiff's economic interference claim is denied.

### IV.     CONCLUSION

For the reasons set forth above, Defendants' motion is granted in part and denied in part. An appropriate Order accompanies this Opinion.


DATED: August 13, 2012

s/ Jose L. Linares             
JOSE L. LINARES
U.S. DISTRICT JUDGE
